1487

George Earl HORN, Respondent v. DAVIS ELECTRICAL CONSTRUCTORS, INC., Appellant.

(395 S.E. (2d) 724)

Court of Appeals

*Wallace K. Lightsey* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for appellant.*

*James C. Spears, Jr.* of *Faucette Law Firm,* Spartanburg, *for respondent.*

Heard Jan. 24, 1990.

Decided April 16, 1990.

CURETON, Judge:

This is a retaliatory discharge action brought pursuant to *S.C. Code Ann.* Section 41-1-80 (Cum. Supp. 1989). The case was tried before a judge and jury. Davis moved for a directed verdict on the grounds that (1) there was no evidence Horn had been actually discharged from his position, (2) there was insufficient evidence of a retaliatory motive, and (3) it was undisputed Horn did not receive a full medical release. The trial judge denied this motion. The judge ruled the jury only needed to decide whether Horn had been discharged in violation of the statute. The verdict form required the jury to find "for the plaintiff" or "for the defendant." After the jury found for Horn the trial judge awarded Horn $9787.68 in lost wages and ordered reinstatement. Davis moved for judgment notwithstanding the verdict which was denied. On appeal Davis does not challenge the computation of lost wages but asserts error in the failure to grant its motion for directed verdict and judgment notwithstanding the verdict. It also appeals the trial court's order of reinstatement. We affirm in part, reverse in part, and remand.

George Horn was employed by Davis Electrical Constructors Inc. as an electrician's helper. He was injured on the job on October 20, 1986. Horn was terminated by Davis approximately ten days later. His termination record indicated the reason for the termination was an injury on the job. Davis has a policy of terminating an employee if the employee remains away from work seven days from the time of the injury. Horn instituted a workers' compensation proceeding. He was temporarily disabled until August of 1987. When released by the physician he received a permanent disability rating and the doctor placed certain temporary restrictions on lifting and climbing. Horn testified the doctor told him to return to his

job and "work into it." Horn inquired about returning to work for Davis. Davis Electrical did not rehire Horn because he did not receive an unrestricted medical release. It is Davis's policy that an employee must have a full medical release with no restrictions in order to return to work after an injury. A company spokesman testified he knew of no reason that Horn would not be rehired if he obtained the medical release.

This court held in *Wallace v. Milliken & Company,* 389 S.E. (2d) 448 (S.C. Ct. App. 1990), that an action under Section 41-1-80 is equitable because the statute provides for the equitable remedies of lost wages and reinstatement. The record indicates the parties and the court treated this case as a law case with submission of the issues of fact to a jury. Obviously, the case was tried before our decision in *Wallace.* It seems clear the court did not consider the jury as advisory only. We believe the parties implicitly agreed to trial by consent under S.C.R. Civ. P 39(c). Under that rule a court may, with the consent of both parties, order a trial by jury. The rule provides the verdict in such a case "has the same effect as if trial had been a matter of right." Under prior statutory authority, a presiding judge could frame issues of fact in an equity case for trial by a jury. *S.C. Code Ann.* Section 15-23-70 (1976), repealed by Act Number 100, 1985 *S.C. Acts* 277. When issues were submitted to a jury under that section the findings of the jury were conclusive if there was any evidence to support them. *S.C. Code Ann.* Section 15-33-70 (1976), repealed by Act Number 100, 1985 *S.C. Acts* 277; *Johnstone v. Matthews,* 183 S.C. 360, 191 S.E. 223 (1937), *Thigpen v. Thigpen,* 217 S.C. 322, 60 S.E. (2d) 621 (1950). Given the procedural posture of this case, we will review the factual findings of the jury to determine if there is any evidence to support them.

## I.

The court's charge on the law is not a matter of record and no issue was raised about it. In considering the theories of the parties we are enlightened by a comment of the trial judge. He stated that if the jury determined Horn was discharged because he could not do the job then Horn would not be entitled to recover. Horn could only recover if the jury concluded he was discharged for filing his claim. Davis argues on appeal

this court should adopt the approach utilized in federal court under Title VII of the Civil Rights Act of 1964. Federal cases interpreting Title VII require a plaintiff to show as part of his prima facie case of retaliatory firing that he was qualified to perform the job at the time of his discharge. *See Williams v. Boorstin,* 663 F. (2d) 109 (D.C. Cir. 1980), *cert. denied,* 451 U.S. 985, 101 S. Ct. 2319, 68 L. Ed. (2d) 842 (1981).

This case was tried before our decision in *Wallace v. Milliken & Company.* In *Wallace* we determined that a plaintiff makes out a prima facie case where he shows (1) he has been discharged and (2) the employer's retaliation for the filing of a workers' compensation claim was an important factor in motivating the employee's discharge. *Wallace,* 389 S.E. (2d) 448 (S.C. Ct. App. 1990); *Lattie v. SHS Enterprises, Inc., d/b/a Midas Muffler,* 389 S.E. (2d) 300 (S.C. Ct. App. 1990).

Davis contends a full medical release was one of the qualifications for the job of electrician's helper. Accordingly, since Horn did not obtain a full medical release, Davis asserts he failed to establish a prima facie case. Davis's argument is one of hindsight. Horn was qualified when hired and performed the job until his injury. Horn was terminated ten days after the injury. At that point Davis knew nothing about Horn's ultimate ability to perform the job after he reached maximum healing from the injury. The record simply reveals a company policy of terminating an employee who does not return to work with a complete medical release within seven days from the date of injury.

Several documents completed by Davis suggest the reason for Horn's discharge was the filing of a workers' compensation claim. Although Davis presented explanations for the documents, Davis conceded in its brief and oral argument that there was evidence of a retaliatory motive based on these documents. Since the discharge occurred within ten days after injury, Davis's argument concerning lack of qualification is unpersuasive. At the time of discharge the evidence indicates that but for the injury and his compensation claim Horn was qualified to perform his job. *Lattie,* 389 S.E. (2d) 300 (S.C. Ct. App. 1990) (proximity in time between compensation proceeding and firing reflects upon prima facie showing of retaliatory discharge). We thus hold Horn presented a prima facie case of retaliatory discharge.

Davis's second argument is that even if Horn established a prima facie case Davis had a nonretaliatory explanation for discharging him and Horn failed to carry the burden of persuasion to demonstrate the explanation was a pretext. Davis's explanation was a pretext. Davis's explanation for discharging Horn in his failure to obtain a full medical release. A Davis supervisor testified the full medical release requirement applied to all injured employees because of the risk of another injury and the lack of light duty jobs.

Section 41-1-80 does not explicitly address the situation where an employer fails to continue to employ an employee who has a partial permanent disability.[1] The section only states that failure to continue to employ an employee who receives compensation for total permanent disability is not to be considered a violation of the section. The section does not provide an affirmative defense to an employer of failure to meet established employer work standards. An employer may prove as an affirmative defense that an employee failed to meet established work standards because he could not perform the physical requirements of the job. Discharge for failure to meet work standards may be established as a bona fide defense if an employee is so disabled as not to be able to carry out the duties of the job. *See Johnson v. Builder's Transp. Inc.* 79 N.C. App. 721, 340 S.E. (2d) 515 (1986).

In arguing that it established its burden of proving Horn did not meet established work standards, Davis states that ten months after the injury Horn had physical limitations which precluded full employment and any retaliatory motive it may have entertained when terminating Horn in October of 1986 was immaterial because Horn would not have met its work standards in any event. We think the point in time the statute requires us to focus upon in determining whether Horn met work standards was at the time he was terminated, not when he requested Davis to rehire him. When focusing on Horn's health status at time of termination, it is clear his inability to perform his job was based solely on the work-related injury for which he was receiving or would receive workers' compensation.

---

[1] There is no evidence Horn would not have eventually been able to perform his duties even with a partial permanent disability.

Our sister state of North Carolina also provides as an affirmative defense the failure of the employee to meet employer work standards. Unlike our statute, however, the North Carolina statute provides the work standard must "not [be] related to the worker's compensation claim."[2] *N.C. Gen. Stat.* Section 97-6.1(c) (1985). In *Burrow v. Westinghouse Elec. Corp.*, 88 N.C. App. 347, 363 S.E. (2d) 215 (1988), *review denied*, 322 N.C. 111, 367 S.E. (2d) 910 (1988), the court held summary judgment for the employer was inappropriate because the claimant had shown his failure to meet the employer's work standards was due to his injury which was the subject of his workers' compensation claim. Although our statute does not contain the provision that the work standard must not be related to the workers' compensation claim, we do not believe our legislature intended to create a protection that could be so easily circumvented by an ingenious employer who terminates an employee before he has had even a minimal opportunity to recover from the work related injury.

We therefore hold that while an employer may discharge an employee who is not permanently totally disabled for inability to perform the duties for which he was hired, the employer must afford the employee a reasonable period of time to demonstrate that he will be able to perform his duties after an injury.[3] There is some evidence to support a conclusion that ten days under the circumstances of this case was not a reasonable period of time to require Horn to return to work. Therefore, Davis's claim that Horn did not meet work standards at the time of termination was a pretext, especially when viewed in conjunction with Davis's admission that there is evidence of retaliatory motive. *See Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 752 P. (2d) 645 (1988) (absences caused by employee's work-related injuries could not be counted against her for purposes of employer's attendance policy).

---

[2]The North Carolina statute also contains a provision that would permit an employer to terminate an employee with a permanent partial disability which interferes with his ability to adequately perform available work. *N.C. Gen. Stat.* Section 97-6.1(e) (1985).

[3]*See Johnson v. Builder's Transp., Inc.*, 79 N.C. App. 721, 340 S.E. (2d) 515 (1986) (employer may discharge employee for a bona fide reason such as the employee is so disabled that he or she is no longer able to effectively carry out the duties of the job).

As stated in the case of *Clifford v. Cactus Drilling Corp.*, 109 Mich. App. 776, 777, 312 N.W. (2d) 380, 381 (1981):

> It would be anomalous for this Court to hold that an employee may not be fired in retaliation for the filing of a workers' compensation claim, *Sventko v. The Kroger Co.*, 69 Mich. App. 644, 245 N.W. (2d) 151 (1976), and then to hold, as the dissent would, that an employer may fire the employee nonetheless because of his absence from work due to the injury for which he is receiving such compensation. The effect of the dissenting opinion in this case would be to create a substantial "loophole" through which this Court's opinion in *Sventko* may be vitiated.
>
> Permitting an employer to fire an employee for absenses due to a compensable claim under the Worker's Disability Compensation Act *would have a chilling effect on the filing of such claims. Public policy, therefore, dictates the opposite result.* Inasmuch as it is the policy of this state that injured employees be fully compensated for their work-related injuries, the firing of such employees on account of their absence from work while recovering from their injuries does violate the established public policy of this state. (Emphasis ours.)

We do not hold by this opinion that the South Carolina Workers' Compensation Law expressly provides injured employees with an excused work absence during their healing period. We simply hold that under the facts of this case the discharge of Horn some ten days after the injury when coupled with evidence of retaliatory motive violated Section 41-1-80.

## II.

Davis argues the court erred in ordering Horn reinstated to his former position. Reinstatement was considered mandatory by the court under Section 41-1-80.

Section 41-1-80 provides, in part, that "an employee discharged or demoted in violation of this section is entitled to be reinstated to his former position." This court held in *Wallace v. Milliken & Company* that an action brought pursuant to this section is an equitable action and relief in the form of

reinstatement is viewed as equitable. *Wallace,* 389 S.E. (2d) 448 (S.C. Ct. App. 1990).

Reinstatement as an equitable remedy is similar to injunctive relief. A decision whether to issue a mandatory injunction rests in the court's discretion. *Sea Pines Plantation Co. v. Wells,* 294 S.C. 266, 363 S.E. (2d) 891 (1987). The court did not exercise discretion here because it interpreted reinstatement as mandatory. We reverse and remand the issue of reinstatement to the circuit court for reconsideration in the exercise of its discretion.

Affirmed in part, reversed in part, and remanded.

SHAW and BELL, JJ., concur.